## Case No. 11,119.

### PICKELL v. The LOPER.

### [Taney, 500.] [1]

Circuit Court, D. Maryland. April Term, 1851.

MARITIME LIENS — SUPPLIES — HOME-PORT—RESIDENCE OF OWNER—FOREIGN SERVICE.

1. The port where a vessel is enrolled and licensed is her home-port. The circumstance that her owner or charterer was a citizen of another state, would not make her a foreign vessel at that port.

[Cited, but not followed, in The Albany, Case No. 131.]

2. Supplies furnished at that port must be considered as furnished at her home-port, and will create no lien on the vessel.

[Cited in The George T. Kemp, Case No. 5,-341; The Rapid Transit, 11 Fed. 329.]

3. A vessel whose voyages are confined within the limits of the district where she is enrolled and licensed, although she may connect with vessels or vehicles by which the line of communication is extended to the port of another state, cannot be considered as engaged upon foreign voyages.

4. The furnishing of necessaries to enable her to perform such voyages, is not a maritime contract, and has no connection with commerce upon the high seas, and does not fall within the principles and reasons upon which the maritime law implies a lien.

[Appeal from the district court of the United States for the district of Maryland.]

[This was a libel in rem by John Pickell against the steamboat Loper to recover the value of certain supplies furnished the vessel. From a decree of the district court dismissing the libel for want of jurisdiction (case unreported), libellant appeals.]

John Glenn, for libellant.
Wm. Hamilton, Jr., for respondent.

TANEY, Circuit Justice. This is a proceeding in rem, to charge the steamboat Loper with the value of a quantity of coal furnished by the libellant for the use of the vessel. The case is imperfectly brought up by the record. It appears from the answer, that the Loper was employed under a charter-party, at the time when the coal was furnished; but the charter-party is not produced, nor is it stated for what voyages she was chartered, nor at what port she was enrolled and licensed. But there is enough in the case, notwithstanding these omissions, to enable the court to decide the question of jurisdiction, which will dispose of the whole case.

It is admitted, that the vessel was employed in voyages between Baltimore and Chesapeake City, which is situated at the entrance

---

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

of the Chesapeake and Delaware Canal, on the Maryland side. She formed part of a line established for the conveyance of passengers and freight between Baltimore and Philadelphia, passing through the canal; but the Loper did not traverse the whole line, her trips from Baltimore terminated at Chesapeake City, in the same collection district; she must, therefore, have been enrolled and licensed in the port of Baltimore, where the coal was furnished. It is also admitted, that she was owned by citizens residing out of the state of Maryland; but the residence of the charterer is not stated.

At the hearing in the district court, the libel was dismissed for want of jurisdiction, and I think the decision was clearly right. The voyages in which the Loper was engaged, and for which these necessaries were furnished, were not even foreign voyages, but were confined to the same state and to the same collection district; they were confined to the district in which she must have been enrolled and licensed. Her connection with another vessel or vehicle by which the line of communication was extended to the port of another state, could not alter the nature or character of the voyages which the Loper performed. And certainly, necessaries supplied to enable a vessel to perform such a voyage, is not a maritime contract, and has no connection with commerce on the high seas, and does not fall within the principles and reasons upon which the maritime law implies a lien. The grounds upon which the power to create these liens by the contract of the master or agent, are briefly and clearly stated in the case of The St. Jago de Cuba, 9 Wheat. [22 U. S.] 416, 417.

But if the Loper had passed through the canal, and run from Baltimore to Philadelphia, this libel in rem could not be maintained. The circumstance that the owner or charterer was a citizen of another state would not make her a foreign vessel in the port of Baltimore; the port at which she was enrolled and licensed was her home-port. And as she belonged to Baltimore, and the supplies were furnished here, they were furnished at her home-port, and created no lien upon the vessel. This question was directly decided by the supreme court, in the case of The General Smith, 4 Wheat. [17 U. S.] 438, in which the court said, that in respect to repairs and necessaries in the port or state to which the ship belongs, the case is governed altogether by the municipal law of that state: and no lien is implied, unless it is recognised by that law. Certainly, there is no law of Maryland which gives such a lien.

The decree of the district court must, therefore, be affirmed, with costs.